214 P.3d 150 (2009)
Hazel D. CAMERON, individually and as personal representative of the Estate of Glenston Page Anderson II, deceased, Appellant,
v.
John Orton MURRAY; Jacob William Franks; Bradley Christian Mann; John Solano Laney; Charles Michael Cook and Diedra Cook, his wife; Nicholas Ryan Homes; Rodney Cameron Craig and Jane Doe Craig, his wife; Meyers Distributing Company, Inc., a Washington corporation; John D. Meyers and Jane Doe Meyers, his wife; Joanne K. Meyers and John Doe Meyers, her husband; Nicole Korman and John Doe Korman, her husband; Todd Korman and Jane Doe Korman, his wife; Jane *151 and/or John Does 1-12, and their spouses [Former Officers, Directors, Shareholders, Supervisors and Employees Of Meyers Distributing Company, Inc.]; and Alaska Distributors Company, a Washington corporation, a/k/a Western Washington Beverage, Respondents.
No. 63401-1-I.
Court of Appeals of Washington, Division 1.
August 17, 2009.
*152 Robert S. Bryan, Shafer Moen & Bryan PS, Seattle, WA, for Appellant.
Gordon G. Hauschild, Jackson & Wallace, Ronald Jay Meltzer, Attorney at Law, Keith Mason Kubik, Law Offices of Keith M. Kubik, Donald Clark Harrison, Attorney at Law, M. Colleen Barrett, Barrett & Worden PS, Sara Ellen `sally' Metteer, Wilson Smith Cochran Dickerson, Seattle, WA, Lisa Ann Liekhus, Law Offices of Steven L. Abel, Bothell, WA, James Edward Kennedy, Kennedy *153 Schuck & Miller PLLC, Bellevue, WA, Timothy A. Reid, Attorney at Law, Issaquah, WA, for Respondents.
BECKER, J.
¶ 1 Should civil liability be imposed upon those who plan and furnish beer for a high school graduation keg party where criminal violence erupts? The appellant Hazel Cameron is the mother of a boy who died as a result of being assaulted at a kegger. She requests that a jury be allowed to decide whether the assault was a foreseeable result of providing unlimited beer to teenagers in a remote location without supervision. But to maintain either a common law or statutory cause of action for assault caused by the negligent furnishing of alcohol to minors, the plaintiff must prove that the assailant had violent tendencies known to the furnishers. Because the record lacks such proof, the trial court did not err in dismissing the case on summary judgment.

FACTS
¶ 2 Viewed in the light most favorable to Cameron, the record shows that in May 1998, Lake Washington High School seniors Nicholas Homes, Jacob Franks, Charles Cook, John Laney, Bradley Mann, and John Murray planned to celebrate their high school graduation by having a keg party at Kachess State Park. More than 100 graduating seniors were expected to attend the party. Homes' cousin, Rodney Craig, was a sales representative for Meyers Distributing Company, a wholesale beer distributor. After collecting money from various seniors, Homes and Franks met Craig in a restaurant parking lot and bought six kegs of beer, each containing 15.5 gallons. This was enough to provide each one of 100 attendees almost one gallon of beer apiece.
¶ 3 One person who arrived at the party was Glen Anderson, the son of Cameron. Murray, Franks, and Mann confronted Anderson because he was only a junior. Murray hit Anderson on the forehead with a heavy glass beer mug. The wound initially appeared to be minor and Anderson had it stitched in an emergency room. But four months later, he collapsed in a coma. He died in 2004 after surviving for more than four years in a persistent vegetative state. An autopsy revealed that the cause of death was the head wound at the keg party, and the death was determined to be a homicide.
¶ 4 In June 2007, Cameron sued Craig, Murray, Franks, Mann, Laney, Cook, Homes, Meyers Distributing (along with its officers, directors, and employees), and Alaska Distributors Company, which had bought Meyers Distributing. The complaint sought to make all defendants jointly and severally liable for Anderson's death.
¶ 5 The court dismissed Meyers Distributing and its officers, directors and employees under the 2006 retroactive dissolved corporation statute of repose. RCW 23B.14.340. Alaska Distributors Company remained in the case as the successor to Meyers for its alleged liability for supplying the kegs. Murray, Franks and Mann were the alleged assailants, but Mann could not be pursued because he was in bankruptcy proceedings. Craig, Homes, Laney, Franks and Cook were alleged to have been negligent in soliciting, conspiring and directly participating in the acquisition of the beer; negligent under RCW 5.40.050 for violating criminal statutes regulating alcohol sales; and negligent for exposing others to a foreseeable high risk of harm from criminal activity.
¶ 6 In June 2008, the trial court granted summary judgment to defendants Craig, Laney, and Homes. The court certified its orders as final under CR 54(b) and RAP 2.2(d). The Supreme Court denied Cameron's motion for direct review and transferred the matter to this court.
¶ 7 The trial court entered extensive findings of fact to support its certification that there is no just reason for delaying the appeal. In particular, the court noted that the evidence is already very old; and without an immediate appeal on the central issue, the potential for two or more trials against splintered groups of defendants is great, with an accompanying risk of piecemeal depositions, inconsistent rulings, appeals and further trials. We conclude there is a demonstrated basis for the trial court's certification that there is no just reason for delay. See Fox v. *154 Sunmaster Prods., Inc. Co., 115 Wash.2d 498, 503, 798 P.2d 808 (1990). We accept the certification and treat the dismissals as final and appealable.
¶ 8 Decisions made on summary judgment are reviewed de novo. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).

COMMON LAW DUTY
¶ 9 To establish an actionable negligence claim, a plaintiff must establish the existence of (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury. Christen v. Lee, 113 Wash.2d 479, 488, 780 P.2d 1307 (1989). Under the common law, it is not a tort to provide intoxicating liquor to "ordinary able-bodied men," and in the absence of a statute, "there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished." Christen, 113 Wash.2d at 494, 780 P.2d 1307, quoting authority cited in Halvorson v. Birchfield Boiler, Inc., 76 Wash.2d 759, 762, 458 P.2d 897 (1969). Washington once had a "Dramshop Act" establishing such a cause of action. After its repeal, our Supreme Court has followed the common law rule and has recognized a common law duty not to furnish intoxicating liquor only when the person served is obviously intoxicated, in a state of helplessness, or in a special relationship to the furnisher of the intoxicants. Christen, 113 Wash.2d at 494, 780 P.2d 1307.
¶ 10 In this case, as in the two consolidated cases addressed in Christen, the type of harm allegedly caused by the furnishing of the liquor is a criminal assault. Criminal assault is "not within the general field of danger traditionally covered by the duty not to furnish intoxicating liquor to an obviously intoxicated person." Christen, 113 Wash.2d at 496, 780 P.2d 1307. Criminal assault is not a foreseeable result unless the drinking establishment "had some notice of the possibility of harm from prior actions of the person causing the injury, either on the occasion of the injury, or on previous occasions." Christen, 113 Wash.2d at 498, 780 P.2d 1307. Here, there is no evidence that those who planned the kegger and furnished liquor for it were aware that any of Anderson's assailants had a propensity for violence. The respondents, accordingly, contend that Christen disposes of Cameron's common law negligence claims.
¶ 11 Cameron contends, however, that the common law rule should be extended to recognize a unique propensity for violence that inheres in a teenage keg party irrespective of what is known about the propensities of any of the individuals present. "The essence of this case is that the defendants intended from the beginning, strove for and achieved creation of, an environment of danger: an unstructured clandestine forum in the woods where a significantly large crowd designedly composed exclusively of teenagers was furnished an almost unlimited volume of beer for the very purposes of overconsumption and intoxicated revelry." Brief of Appellant at 24.
¶ 12 Cameron draws an analogy to Parrilla v. King County, 138 Wash.App. 427, 157 P.3d 879 (2007). In Parrilla, a Metro bus driver responded to a passenger's bizarre behavior by getting out of the bus and leaving the engine running. The erratic passenger took the wheel and drove the bus down a busy street, crashing it into several vehicles including one driven by plaintiff Parrilla. This court held that under the circumstances a jury could find a breach of the duty owed to Parrilla even though the damage was caused by the criminal act of a third party. A duty to guard against a third party's criminal conduct "may exist where an actor's affirmative act has exposed another to a recognizable high degree risk of harm through such misconduct, which a reasonable person would take into account." Parrilla, 138 Wash.App. at 435, 157 P.3d 879, citing Restatement (Second) of Torts § 302 B (1965) and Kim v. Budget Rent A Car Sys., Inc., 143 Wash.2d 190, 15 P.3d 1283 (2001). The bus driver's affirmative act of leaving the bus unattended and idling exposed third parties such as Parrilla to foreseeable injury at the hands of the noticeably unhinged passenger:

*155 Here, the bus driver left the bus with the engine running next to the curb of a public street, with Carpenter on board. Significantly, the bus driver was fully aware that Carpenter was acting in a highly volatile manner. Indeed, Carpenter had displayed a tendency toward criminal conduct by refusing the driver's requests that he leave the bus and by hitting the windows of the bus with his fists. Furthermore ... the 14-ton bus here was a vehicle uniquely capable of inflicting severe damage. The risk of harm arising from the criminal operation of such a vehicle was recognizably high. Moreover, the bus was stolen by Carpenter mere moments after it was left unattended, not at a remote future time by an unknown individual.... A jury could well find that Carpenter's actions were reasonably foreseeable under these circumstances.
In sum, pursuant to the facts alleged by the Parrillas, an instrumentality uniquely capable of causing severe injuries was left idling and unguarded within easy reach of a severely impaired individual. The bus driver was aware of these circumstances. Assuming the truth of these averments, the bus driver's affirmative act created a high degree risk of harm through Carpenter's misconduct, which a reasonable person would have taken into account.
Parrilla, 138 Wash.App. at 440-41, 157 P.3d 879.
¶ 13 Cameron contends it is similarly foreseeable that a teenage kegger will produce criminal violence. Like a large bus, a kegger can be characterized as "an instrumentality uniquely capable of causing severe injuries" when left unguarded and in the hands of members of a demographic group that is notoriously incapable of self-control when affected by alcohol.
¶ 14 The comparison is not inapt. Nevertheless, Christen is the closer case and the precedent we must follow in a case concerning an alcohol furnisher's liability for an assault by an intoxicated person. Liability will not be imposed unless the furnisher had more specific notice that the intoxicated person has violent propensities. It is not enough to rely on the general notion that bad things happen when crowds of young people get very drunk together. Even in Parrilla, the closest Washington case Cameron can offer in her attempt to get past Christen, the court found it significant that (1) the driver was specifically aware of the passenger's impairment and (2) the harm was caused immediately upon allowing the passenger to get control of the bus, not at "a remote future time by an unknown individual." Parrilla, 138 Wash.App. at 440, 157 P.3d 879.
¶ 15 Cameron also cites a Rhode Island decision in favor of a plaintiff who was attacked with a baseball bat at a high school graduation party. The court allowed suit against the host who had allowed consumption of alcohol by underage drinkers. Martin v. Marciano, 871 A.2d 911 (R.I.2005). But in Martin, there was evidence that a fight had erupted earlier in the evening between the assailant and the plaintiff's friends, and the assailant had been thrown out, only to return with reinforcements half an hour later. Martin, 871 A.2d at 914. Cameron does not have similar evidence of prior misconduct by the assailants. Also, the drunken assault in Martin occurred right under the nose of the host at her own house, adding the feature of premises liability that Christen recognized as an important factor where the common law rule might be extended to cover cases of criminal assault. Indeed, Christen recognizes, at least as far as drinking establishments are concerned, that liability may result from the failure to intervene as soon as possible in an assault committed on the premises by an intoxicated patron. Christen, 113 Wash.2d at 504-06, 780 P.2d 1307. There is no aspect of premises liability in the present case.
¶ 16 One of the two cases decided in Christen was Long v. Coates, where there was evidence that the defendant, age 20 at the time, drank 12-15 beers and was obviously drunk before going to a bar called "McDougall's." No one at the bar made any effort to find out whether he was a minor. He was served several drinks. After leaving the bar, Coates caused a car accident and was pulled over by an off duty patrolman. Coates stabbed the patrolman. Christen, 113 Wash.2d at 485-86, 780 P.2d 1307. The Supreme *156 Court affirmed summary judgment dismissal of the patrolman's case against McDougall's because there was no evidence that the defendant was known at the bar to be a violent troublemaker or that his behavior that night gave any hint of the violence to come. Christen, 113 Wash.2d at 498, 780 P.2d 1307. In holding the bar free of liability, the court acknowledged its reluctance to extend common law liability beyond its well-recognized exceptions, especially in view of the extensive involvement of the legislature in making policy judgments about liability for the furnishing of alcohol:
In sum, the history of the duty owed by a furnisher of intoxicating liquor in this state evinces a well considered and reasoned reluctance on the part of this court, in light of the Legislature's repeal of this state's dramshop act, to now judicially decree common law liability in cases other than those fitting within the well-recognized exceptions to the common law rule.
Christen, 113 Wash.2d at 495, 780 P.2d 1307.
¶ 17 Christen is dispositive. In the absence of evidence that alleged assailants Murray, Franks and Mann gave some notice that they, as individuals, were likely to become violent, as a matter of law their assault upon Anderson was not within the scope of any common law duty owed by those who planned the kegger and furnished the beer.

STATUTORY DUTY
¶ 18 Cameron's next argument is that the defendants were negligent based on their violation of various statutes forbidding sale of alcohol to minors, purchase of alcohol by minors, furnishing of kegs to minors, and the unlicensed or unregistered sale of kegs. But again, she encounters Christen and its holding that a criminal assault is not a foreseeable result of furnishing alcohol to minors.
¶ 19 To determine whether a duty of care exists based upon a statutory violation, Washington courts apply the restatement test, which, among other things, requires that the injured person be within the class of persons the statute was enacted to protect. Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 475 and n. 2, 951 P.2d 749 (1998); Restatement (Second) of Torts § 286 (1965). A court looks to the language of the statute to ascertain whether the plaintiff is a member of the protected class. "When a duty is found to exist from the defendant to the plaintiff then concepts of foreseeability serve to define the scope of the duty owed." Schooley, 134 Wash.2d at 475, 951 P.2d 749.
¶ 20 In Schooley, a grocery store sold alcoholic beverages to minors. These minors provided the alcohol to other minors. Among those drinking was Schooley who later dove into a pool that was only two feet deep. She fractured her spinal cord. The court concluded that a jury could be permitted to hold the grocery store liable for her injuries. As a minor, Schooley was in the class of persons that statutes prohibiting the sale of liquor to minors were designed to protect. Schooley, 134 Wash.2d at 475-76, 951 P.2d 749. "Because minors who drink commonly do so with other minors, protecting all those injured as a result of the illegal sale of alcohol to minors is the best way to serve the purpose for which the legislation was created, to prevent minors from drinking." Schooley, 134 Wash.2d at 476, 951 P.2d 749; see also Crowe v. Gaston, 134 Wash.2d 509, 951 P.2d 1118 (1998).
¶ 21 While the above-quoted excerpts from Schooley might sound promising for Cameron's case, the fact is that Schooley cites Christen favorably and does nothing to undermine Christen's holding that guarding against a criminal assault is not within the scope of the statutory duty. In Christen, in the case of minor defendant Coates, the court held that the legislature did not intend to go so far as to protect against intentional criminal assault by a minor to whom liquor has been illegally furnished:
Concerning the statute against furnishing intoxicating liquor to a minor, the courts of this state have held that a violation of this proscription can constitute negligence per se. These cases, however, also involve automobile accidents. Furthermore, we have previously accepted the prevention of driver error as the obvious and legitimate purpose behind legislation establishing 21 as the legal drinking age. *157 Thus, we likewise conclude that the general field of danger covered by this statutory duty is that of driver error and that a criminal assault is not a foreseeable result from a violation thereof. Again, we perceive the Legislature as intending to protect against foreseeable hazards and conclude, therefore, that the sale to minors statute was not intended to protect against the particular hazard of a subsequent criminal assault by the consumer of the alcohol.
Christen, 113 Wash.2d at 503-04, 780 P.2d 1307.
¶ 22 Thus, Christen disposes of Cameron's statutory-based claim along with her common law claim, without regard to whether the defendants are classified as social hosts or commercial vendors.

EXHIBITS
¶ 23 To support her argument that criminal assault is a reasonably foreseeable outcome of a teenage keg party, Cameron submitted Exhibit 6, entitled "Judicial Notice Material from the community demonstrating the long and well-known relationship between youthful alcohol consumption and violence, as retrieved from the Internet." Attached were several scientific articles linking underage drinking and aggression, along with a copy of a letter to parents from the Lake Washington High School principal dated May 27, 1998. The letter warned against inappropriate year-end "celebrations".
If we are candid, we know that alcohol, drugs, violence, vandalism, and teenage parties are problems in our society and our local community  and are real pressures that our teenagers face today. Sadly, this is all too often the time of year we hear media reports of tragic accidents or events involving teenagers.
Cameron wanted the trial court to use these materials to take "judicial notice" that violence foreseeably accompanies teenage drinking parties.
¶ 24 The trial court granted the defendants' motion to strike these materials from the record. Cameron assigns error to this ruling. Her objection is well taken. To begin with, materials submitted to the trial court in connection with a motion for summary judgment cannot actually be stricken from consideration as is true of evidence that is removed from consideration by a jury; they remain in the record to be considered on appeal. Thus, it is misleading to denominate as a "motion to strike" what is actually an objection to the admissibility of evidence that could have been preserved in a reply brief rather than by a separate motion. More importantly, Cameron was not offering the articles about drinking and violence as proof of her claim to be considered by the finder of fact. Rather, she was offering them to support her policy argument for loosening the lid Christen has placed on what is reasonably foreseeable. Her materials do not constitute "adjudicative facts", of which judicial notice may be taken under ER 201(a)-(d) only when strict criteria are met. But conceivably they might constitute "legislative facts", described as background information a court may take into account "when determining the constitutionality or proper interpretation of a statute, or when extending or restricting a common law rule." 5D WASH. PRAC., HANDBOOK WASH. EVID. ER 201 Comment (1). (2008-09 ed.). This category of judicial notice is not often mentioned or employed, but it did receive extensive discussion in a case where the Supreme Court affirmed this court's decision to eliminate the cause of action of alienation of affections  itself a judicially created common law cause of action. Wyman v. Wallace, 94 Wash.2d 99, 102-03, 615 P.2d 452 (1980).
In making a policy judgment such as the continuation of the doctrine of alienation of affections, it is certainly preferable to have a fully developed trial record.... However, trial courts and appellate courts can take notice of "legislative facts"  social, economic, and scientific facts that "simply supply premises in the process of legal reasoning." Houser v. State, 85 Wash.2d 803, 807, 540 P.2d 412 (1975); E. Cleary, McCormick's Evidence 759, 768-69 (2d ed.1972). Under this doctrine, a court can take notice of scholarly works, scientific studies, and social facts. See E. Cleary, supra at 759, 768-69; see, e.g., Planned Parenthood v. Danforth, 428 U.S. 52, 71, 75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Houser v. State, supra *158 at 807-09, 540 P.2d 412. This legislative fact doctrine is expressly recognized by both the state and federal rules of evidence. In establishing strict requirements for judicial notice of "adjudicative facts," the state and federal rules carefully ensure that these requirements will not also restrict notice of "legislative facts." See ER 201(a), Comment; Fed. R. Evidence 201(a), Advisory Committee's note. As the commentaries to these rules explain, it is essential that courts have the unrestricted ability to employ judicially noticed "legislative facts" in formulating legal rules. Fed. R. Evidence 201(a), Advisory Committee's note; ER 201(a), Comment.
Judicial notice of legislative facts is frequently necessary when, as in the present case, a court is asked to decide on policy grounds whether to continue or eliminate a common law rule. ER 201(a), Comment; E. Cleary, supra at 759, 768-69.
Wyman, 94 Wash.2d at 102-03, 615 P.2d 452. The materials submitted by Cameron resemble the materials discussed in the concurrence/dissent in Christen written by Justice Utter, who was also the author of Wyman. See Christen, 113 Wash.2d at 517-520, 780 P.2d 1307 (reviewing research and other literature suggesting a causal connection between alcohol and violence).
¶ 25 Because ER 201 does not restrict notice of the material contained in Cameron's exhibits, we reverse the order granting the motion to strike. But notwithstanding the information and insights contained in those exhibits, the precedent is well-established in Washington case law that in the absence of particularized notice, criminal assault is not a foreseeable result of providing alcohol. The liability belongs to the assailant, not to those who may have furnished alcohol to the assailant. For this reason, the trial court correctly granted the defense motions for summary judgment.
¶ 26 Affirmed.
WE CONCUR: STEPHEN J. DWYER, A.C.J., and LINDA LAU, J.