**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 7, 2024

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 7, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| M.G., by and with his Guardian ad Litem, Priscilla G., | ) ) ) | No. 101799-5 |
| Respondent, | ) ) | |
| v. | ) ) | En Banc |
| YAKIMA SCHOOL DISTRICT NO. 7, a municipal corporation, | ) ) ) ) | |
| Petitioner. | ) | Filed: <u>March 7, 2024</u> |

MADSEN, J.—Washington state law and administrative code regulate the imposition of student discipline by school districts. Both prohibit the indefinite expulsion or suspension of a student as a form of discretionary discipline. RCW 28A.600.015(1), .020(6); WAC 392-400-430(8)(a). Here, Yakima School District No. 7 (District) expelled a high school student, M.G., on an emergency basis and extended it to a long-term suspension without providing M.G. with the statutorily required procedural protections.

The Court of Appeals held that M.G. was indefinitely suspended in violation of his statutory procedural rights and reversed the superior court's summary dismissal of M.G.'s suit. The Court of Appeals also determined that the case is not moot since M.G. did not voluntarily withdraw from high school in the District following the District's denial of his request to return to his regular educational setting. It concluded that M.G.'s long-term suspension for an indefinite period of time violated RCW 28A.600.015(1) and WAC 392-400-430(8). The court also found that M.G. was not precluded from seeking compensatory education for the time he was excluded from his regular educational setting. We affirm the Court of Appeals.

In addition, M.G. seeks to strike sections of the District's responses to the amici briefs. We grant the motion to strike in part.

BACKGROUND

M.G. and his mother live in Yakima County, Washington. He resides within the boundaries of the District. In 2019, M.G. began attending Eisenhower High School. While in middle school, M.G. had signed a behavior agreement, or "gang contract." Clerk's Papers at 5-6.

Shortly after the 2019 school year began, the District emergency expelled M.G. from Eisenhower for violating the gang contract. The basis for expulsion included M.G. wearing a red shirt, which is affiliated with the Norteño gang, and M.G.'s altercation with a student. Approximately two weeks later, the District converted M.G.'s 10-day emergency expulsion into a long-term suspension, totaling 12 days. The District

provided written notice to M.G. the next day. The notice stated in part, "Due to this situation and the involvement in others, aka victim of previous threat, [the student] will be long-term suspended and placed in an alternative educational setting." *Id*. at 42, 77-78.

M.G. appealed the suspension. Following a hearing, the District sent M.G. and his mother a written hearing decision affirming the long-term suspension of 12 days and a return date of September 23, 2019. M.G. did not appeal. However, one day prior to the conclusion of the suspension, the District's executive director of student life wrote to M.G.'s mother, informing her that the District's school transfer committee decided that M.G. was prohibited from returning to Eisenhower. M.G. did not receive any notice regarding the educational services he would be provided during his suspension.

Approximately one month after the conclusion of the suspension, the District enrolled M.G. in Yakima Online, a computer online learning program established by the District as an alternative learning experience. M.G. signed up for art, science, and music classes. M.G. lacked a laptop at home, so he would travel to a distant computer lab to access his classes.

M.G.'s performance was unsatisfactory. The District assessed M.G.'s academic levels and found that he performed at a grade level below that required at Yakima Online. Shortly after beginning Yakima Online, M.G., through counsel, spoke with Eisenhower's principal and vice principal. They acknowledged that M.G.'s suspension ended, but stated that he could not return because of his gang-associated "Mongolian" hairstyle that

violated school policy. *Id*. at 7. No new form of written discipline had been received in relation to M.G.'s hairstyle.

In the following months, M.G.'s counsel initiated discussions with the District, seeking a transfer for M.G. from the online classes to a building-based high school. At one meeting, the District's representative acknowledged that the online learning program was not meeting M.G.'s needs. M.G. unsuccessfully sought reenrollment in another high school in the District. The requested transfer was denied based on M.G.'s refusal to alter his alleged gang-style haircut and on incidents in which M.G. visited different schools under a different name and was seen flashing gang signs. The denial letter cited Yakima School District Policy 3131, which gives the District the right and responsibility to enroll students and determine enrollment options in classrooms.

In response, M.G. requested reconsideration of the District's decision denying his transfer request. A meeting was held with members of the District who participated in the denial of the transfer decision. Shortly after that meeting, the principal of Yakima Online provided an intervention plan to M.G. M.G. opposed the plan and instead sought to return to his regular educational setting.

In March 2020, counsel for M.G. received a letter from the District, affirming the previous denial of M.G.'s request to transfer to a high school within the District and cited M.G.'s refusal to change his hairstyle as the basis for denial. M.G. then sent a letter to Eisenhower two days after receiving the denial letter, requesting that he be allowed to return to Eisenhower in accordance with WAC 392-400-430(8)(b). The letter identified

Eisenhower as M.G.'s regular educational setting following the end date of his suspension.

The District responded by e-mail and, without a hearing, denied M.G.'s request. The District again invoked M.G.'s refusal to change his hairstyle and alleged gang affiliation. However, considering the newly remote nature of education during the COVID-19 pandemic (coronavirus disease 2019), the District allowed M.G. to attend Eisenhower online and provided M.G. with a laptop and access to wireless Internet.

The following month, M.G. appealed the District's March decision denying his request to return to Eisenhower under chapter 28A.645 RCW. M.G. argued that he was statutorily entitled to reinstatement at Eisenhower and that the District violated his constitutional right to an education and to due process prior to denying him in-person schooling due to his hairstyle and clothing.

For relief, M.G. sought an order under chapter 7.24 RCW, the Uniform Declaratory Judgments Act (UDJA), requiring the District to return him to Eisenhower and afford him compensatory education services for the time that he was excluded from his regular educational setting following his suspension.

On M.G.'s motion for summary judgment, the superior court affirmed the District's decision to deny M.G. reentry into Eisenhower. The court denied M.G.'s motion and dismissed the case.

M.G. appealed. The District moved to dismiss the appeal as moot. The District argued that M.G. had left the school system for an extended period of time that exceeded

20 days, and M.G. thus was no longer an enrolled student. M.G.'s family experienced a period of homelessness, leading them to temporarily reside outside the District. M.G. then returned and requested to be reenrolled in Yakima Online or an alternative program.

The Court of Appeals rejected the mootness argument, concluding that M.G. did not voluntarily withdraw from Eisenhower but was forced to leave the District during the pendency of his appeal from the March 2020 decision denying his return to Eisenhower. *M.G. v. Yakima Sch. Dist. No. 7*, 24 Wn. App. 2d 703, 721, 524 P.3d 670 (2022). By the time the March decision was made, M.G. returned to Yakima and sought reenrollment in Eisenhower. The Court of Appeals further held that it could grant compensatory educational services to M.G as an equitable remedy, reversing the superior court and noting that none of the exceptions to the statutory and regulatory prohibition against indefinite suspensions applied. *Id*. at 722. Thus, M.G. was indefinitely suspended in violation of RCW 28A.600.015(1). *Id*. at 726. The Court of Appeals did not address M.G.'s constitutional right to an education and due process arguments. It also did not address whether the District discriminated against minority students in applying disciplinary rules.

The District petitioned for review here, which we granted. M.G. seeks to strike portions of the District's responses to the amicus curiae briefs from both the American Civil Liberties Union of Washington (ACLU) and Attorneys for Education Rights.

ANALYSIS

Questions of statutory construction are reviewed de novo. *El Centro de la Raza v. State*, 192 Wn.2d 103, 111, 428 P.3d 1143 (2018) (plurality opinion). "Our fundamental objective in construing a statute is to ascertain and carry out the intent of the legislature." *Fed. Way Sch. Dist. No. 210 v. Vinson*, 172 Wn.2d 756, 765, 261 P.3d 145 (2011). When construing the meaning of a statute, we look to its plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002). If the meaning cannot be derived from looking at the language of the statutory text, then we look to related statutes and the overarching statutory scheme. *Id*.

1. <u>M.G. Was Indefinitely Suspended in Violation of Statutory and Regulatory Disciplinary Procedures</u>

The parties disagree about how to characterize the decision to exclude M.G. from Eisenhower. The District contends it made a placement decision, while M.G. argues that the District made a disciplinary decision entitling him to due process protections, which the District failed to provide. We agree with M.G. and hold that the District's decision was disciplinary.

Students who face suspensions are entitled to due process, typically by being provided notice of charges and an opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 581, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). A student's property interest in educational benefits is substantial enough to warrant due process protection. *Id*. at 576. M.G. argues that his constitutional right to due process was violated; however, this court will generally avoid constitutional questions when a case can be decided on nonconstitutional grounds.

*See State v. Houston-Sconiers*, 188 Wn.2d 1, 18 n.3, 391 P.3d 409 (2017); *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 469 n.75, 61 P.3d 1141 (2003). Because the legislature has acted to provide protections, we resolve this case on statutory grounds.

The statute controlling expulsions and suspensions states,

(1) The superintendent of public instruction shall adopt and distribute to all school districts lawful and reasonable rules prescribing the substantive and procedural due process guarantees of pupils in the common schools. Such rules shall authorize a school district to use informal due process procedures in connection with the short-term suspension of students to the extent constitutionally permissible: PROVIDED, That the superintendent of public instruction deems the interest of students to be adequately protected. . . . An expulsion or suspension of a student *may not be for an indefinite period of time*.
(2) Short-term suspension procedures may be used for suspensions of students up to and including, 10 consecutive school days.
(3) Emergency removals must end or be converted to another form of corrective action within ten school days from the date of the emergency removal from school. Notice and due process rights must be provided when an emergency expulsion is converted to another form of corrective action.
(4) School districts may not impose long-term suspension or expulsion as a form of discretionary discipline.

RCW 28A.600.015[1] (emphasis added). As noted, M.G. was removed from Eisenhower on an emergency basis. About two weeks later, that emergency removal was converted to a long-term suspension in accordance with RCW 28A.600.015(3). A hearing officer affirmed the suspension on appeal. M.G.'s suspension was set to end, and he was set to return on a specific date.

---

[1] After accepting review of this case, RCW 28A.600.015 was amended in 2023 to use the term "removal" instead of "expulsion" in .015(3). Since the amendments to the statute do not affect the outcome of our decision, we cite to the current version of the statute.

M.G. argues that after the long-term suspension was imposed, the District was required to create a culturally responsive reengagement plan[2] and failed to do so. M.G. is correct. The District was required to convene a meeting with the student and the student's parents or guardians within 20 days of the student's long-term suspension. *See* RCW 28A.600.022(1) ("School districts must convene a meeting with the student and the student's parents or guardians within twenty days of the student's long-term suspension."). The District did not do so here.

Instead, when M.G. attempted to return after his suspension ended, the District informed M.G. that he would not be allowed to return to Eisenhower. No hearing occurred regarding this decision.

After M.G.'s transfer requests were denied, he demanded to return to Eisenhower. The District denied this request via e-mail, citing M.G.'s refusal to change the alleged gang-associated hairstyle and M.G.'s behavior that had ultimately resulted in his suspension. The reason for the denial was disciplinary in nature, and no new disciplinary proceeding had been initiated against M.G. regarding the stated reasons for the denial. Nor was M.G. afforded a hearing for the decision denying his request to return to Eisenhower.

---

[2] RCW 28A.600.022(1) concerns reengagement plans and explains, "School districts must convene a meeting with the student and the student's parents or guardians within twenty days of the student's long-term suspension or expulsion, but no later than five days before the student's enrollment, to discuss a plan to reengage the student in a school program. Families must have access to, provide meaningful input on, and have the opportunity to participate in a culturally sensitive and culturally responsive reengagement plan."

As the Court of Appeals correctly pointed out, if the District sought to extend the suspension, it could have done so by petitioning the District superintendent to extend the expulsion under WAC 392-400-480. We agree that a school district has the authority and the duty to make decisions to ensure the safety of its students. However, the legislature has put in place procedural safeguards to ensure students are provided due process when these kinds of decisions are made that greatly impact their education. In this case, the District was limited to following the conditions outlined in WAC 392-400-430 regarding student disciplinary matters and failed to do so.

WAC 392-400-430(8) states,

> (a) An expulsion or suspension of a student may not be for an indefinite period of time and must have an end date.
> (b) If a school district enrolls a student in another program or course of study during a suspension or expulsion, the district *may not preclude the student from returning to the student's regular educational setting* following the end date of the suspension or expulsion, unless:
> (i) The school district superintendent or designee grants a petition to extend a student's expulsion under WAC 392-400-480;
> (ii) The student is excluded from the student's regular educational setting in accordance with WAC 392-400-810; or
> (iii) The student is otherwise precluded under law from returning to the student's regular educational setting.

(Emphasis added.) The District conceded below that none of the exceptions listed under WAC 392-400-430(8)(b)(i)-(iii) apply here. Nevertheless, the District argues that this was a discretionary placement decision based on safety concerns and that RCW 28A.320.015(1) grants to a school board broad discretionary power to address safety concerns.[3] The District also points to Yakima District Policy 3131, which it claims

---

[3] Under RCW 28A.320.015,

establishes its right and responsibility to consider safety when it makes enrollment and placement decisions. We disagree.

The plain reading of WAC 392-400-430(8)(b) demonstrates that the District was required to allow M.G. to return to his regular educational setting upon the conclusion of his suspension. Furthermore, RCW 28A.320.015(1)(a) makes clear that school boards may not adopt written policies that conflict with other laws. If the District were allowed to rely on Policy 3131 to justify M.G.'s exclusion, it would conflict with RCW 28A.600.015 and WAC 392-400-430 because M.G.'s suspension was meant to end after 12 days. By framing the denial of M.G.'s return to Eisenhower as an enrollment or placement decision, the District essentially sidesteps the procedural due process protections afforded to students under chapter 28A.600 RCW and WAC 392-400. Agreeing with the District would undermine the legislature's intent as expressed in RCW 28A.600.015 to "[r]educe the length of time students of color are excluded from school due to suspension and expulsion and provide students support for reengagement plans." FOURTH SUBSTITUTE H.B. 1541, at 2, 64th Leg., Reg. Sess. (Wash. 2016). If the District had additional behavior concerns to justify a continued suspension, it was required to

---

(1) The board of directors of each school district may exercise the following:
    (a) The broad discretionary power to determine and adopt written policies not in conflict with other law that provide for the development and implementation of programs, activities, services, or practices that the board determines will:
        . . . .
        (ii) Promote the effective, efficient, or safe management and operation of the school district.

follow the substantive and procedural limitations prescribed by RCW 28A.600.015-.022 and WAC 392-400-480.

The District characterizes M.G.'s claim as arguing for a right to an education in the school of his choice and cites cases such as *Parents Involved in Community Schools v. Seattle School District No. 1*, 149 Wn.2d 660, 72 P.3d 151 (2003). Pet'r's Suppl. Br. at 2. But that case involved the denial of students' preferred choice of school, not placement related to discipline. M.G.'s case is different. He is not seeking to attend a school he was never enrolled in; rather, he sought to be returned to his *regular educational setting*, as set out in WAC 392-400-430, at the conclusion of his suspension. Further, the District's enrollment of M.G. in Yakima Online did not control whether M.G. was entitled to return to Eisenhower. RCW 28A.600.015(8) requires school districts to provide an opportunity for students to receive educational services during their suspension, but those services are not a substitute for the student's placement following suspension.

The Court of Appeals correctly concluded that M.G. was indefinitely suspended and was entitled to return to his regular educational setting following the conclusion of his suspension absent further disciplinary action permitted by statute. We affirm that decision.

2. M.G.'s Statutory Remedy

M.G. appealed the District's decision preventing M.G. from reenrolling at Eisenhower under chapter 28A.645 RCW and sought declaratory relief allowing him to

return to Eisenhower and to provide him with compensatory education. *See* ch. 7.24 RCW. While chapter 28A.645 RCW is silent as to remedies, the UDJA provides for equitable relief. RCW 7.24.080. M.G.'s supplemental briefing argues that in light of this silence, a court should be able to craft equitable relief if it determines that there has been a statutory violation. M.G. further argues that compensatory education should be an equitable remedy under the UDJA and chapter 28A.645 RCW.

When no adequate legal remedy exists, a court may exercise its equitable powers to grant equitable relief. *Orwick v. City of Seattle*, 103 Wn.2d 249, 252, 692 P.2d 793 (1984) (finding that the superior court had jurisdiction to grant equitable relief where the petitioners alleged that there were system-wide violations of mandatory statutory requirements by a municipal court). Where a statute provides a right of recovery, it is incumbent on the court to devise a remedy. *State v. Manuel*, 94 Wn.2d 695, 699, 619 P.2d 977 (1980); *see also Beggs v. Dep't of Soc. & Health Servs.*, 171 Wn.2d 69, 78, 247 P.3d 421 (2011).

Considering the silence on remedies within the school disciplinary statutes and regulations, as well as the statute authorizing appeals from school board decisions to the superior court, we remand this case to the trial court to determine, in its discretion, the type of equitable relief to which M.G. is entitled. *See* ch. 28A.645 RCW; ch. 28A.600 RCW; ch. 392-400 WAC. It will be for the trial court to decide what relief is an appropriate remedy for the District's statutory violations. This remedy may include compensatory education as discussed below.

3. <u>Compensatory Education as an Equitable Remedy</u>

The District claims the Court of Appeals erred when it held that M.G. was not precluded from seeking compensatory education as an equitable remedy. It argues that there is no precedent to support the award of compensatory education to students who voluntarily absent themselves and choose not to avail themselves of educational services. Moreover, it contends that compensatory education is limited to students who have not received Free and Appropriate Education (FAPE) under the Individuals with Disabilities Education Act (IDEA), Pub. L. No. 101-476, 104 Stat. 1142.[4]

M.G. argues that when the right to education is denied, a meaningful remedy is necessary, and therefore, M.G. requested equitable relief in the form of compensatory education under the UDJA. M.G. seeks to earn his high school diploma or GED (general equivalency diploma) and suggests the District provide him with a one-to-one teacher. We hold that compensatory education is a form of equitable relief available to M.G. for the violation of rights created by the educational statutes discussed above.

Compensatory education seeks to "make up for 'educational services the child should have received in the first place.'" *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*,

---

[4] The District also argues that M.G.'s claim for compensatory education is moot since he left the District and that he failed to exhaust administrative remedies for purposes of establishing a claim for compensatory educational services. These two arguments are not convincing. M.G. returned to the District during the pendency of the appeal and did not abandon his request for enrollment. Continuity of residence cannot be a prerequisite to the grant of compensatory education since it would allow school districts to stop providing required services with the goal of inducing the student to move out of the district. *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 497 (3d Cir. 2012). Therefore, M.G.'s claim for compensatory education is not moot. Since M.G. was not seeking compensatory education under any disabilities act, he was not required to exhaust remedies.

631 F.3d 1117, 1125 (9th Cir. 2011) (quoting *Reid ex rel. Reid v. Dist. of Columbia*, 365 U.S. App. D.C. 234, 401 F.3d 516, 518 (2005)).  Trial courts have "'broad discretionary power to fashion equitable remedies.'"  *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 206, 471 P.3d 871 (2020) (quoting *In re Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994)).  Here, the Court of Appeals acknowledged that the equitable remedy of compensatory education is most often awarded in the context of special education litigation but held the remedy was not limited to cases involving special education.  *See Milliken v. Bradley*, 433 U.S. 267, 282, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977) (holding that the district court did not abuse its discretion in ordering compensatory educational programs for schoolchildren who had been subject to de jure segregation); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 778 F.2d 404, 408 (8th Cir. 1985) (finding that compensatory and remedial programs were potential remedies for children who attended segregated schools).  The District cites no authority to support its claim that compensatory education is available *only* to a student who has not received FAPE under the IDEA.

The essence of a court's equity power lies in its inherent ability to adjust remedies in a practical way to redress injuries resulting from a denial of a constitutional right. *Freeman v. Pitts*, 503 U.S. 467, 487, 112 S. Ct. 1430, 118 L. Ed. 2d 108 (1992).  We hold that compensatory education is a form of equitable relief available to those who have been denied the rights guaranteed under the state's educational statutes and remand this

case for the trial court to consider an appropriate remedy, which may include compensatory education.

4.  M.G's Constitutional Right to an Education

Washington's constitution provides that it is the State's duty to "make ample provision for the education of all [resident] children." WASH. CONST. art. IX, § 1.  It is a positive constitutional right that does not constrain government action but, rather, requires it.  *McCleary v. State*, 173 Wn.2d 477, 519, 269 P.3d 227 (2012).  We look to "whether the state action achieves or is reasonably likely to achieve 'the constitutionally prescribed end.'"  *Id*. (quoting Helen Hershkoff, *Positive Rights and State Constitutions: The Limits of Federal Rationality Review*, 112 HARV. L. REV. 1131, 1137 (1999)).  The word "education" consists of the opportunity to obtain the knowledge and skills described in case law and legislatively enacted education goals but does not reflect a right to a guaranteed educational outcome.  *Id*. at 525-26.

M.G. contends that the education he was receiving after his enrollment at Yakima Online was so deficient that it was unconstitutional.  He claims that the District violated his right to an education when it moved him to an online program without appropriate academic support, without core classes for basic education, without needed technology, and without a culturally competent reengagement plan.  The District denies this and claims that M.G. was unsuccessful due to his own failure to consistently attend classes.  The District also urges us to adopt a "total exclusion" standard used by other jurisdictions to determine whether a student's right to education has been violated.  Under the total

exclusion standard, students are deprived of their right to education only when they are totally excluded from the educational process. *See A.V. v. Plano Indep. Sch. Dist.*, 585 F. Supp. 3d 881, 894 (E.D. Tex. 2022) (noting that courts will look at whether a student has been totally excluded from the educational process to determine if their right to an education has been violated).

Whether Yakima Online was sufficiently comparable to the regular educational services at Eisenhower was not litigated below. Without a sufficient record, it is difficult to determine whether M.G. was provided with the opportunity for an adequate education. Moreover, because we remand for the trial court to determine an equitable remedy for statutory violations, we decline to address this issue.

5. <u>M.G.'s Motion To Strike</u>

Finally, M.G. moves to strike portions of the District's briefing. We grant M.G.'s motion, in part.

M.G. moves to strike sections of the District's response briefs to amici curiae. M.G. contends the District violated RAP 10.3(a)(5). RAP 10.3(a)(5) states that a reference to the record "must" be included for each factual statement. This appellate rule concerns briefs of the appellant or petitioner—that is, briefs on the merits. The contested briefs here are not merits briefs, they are answers to an amici. On its face, RAP 10.3(a)(5) does not apply.

The rule addressing answers to amici curiae briefs says only that they "should" be limited to new matters raised in the amici brief. RAP 10.3(f). Generally, all briefing to

this court should provide citation to the record. *See Hurlbert v. Gordon*, 64 Wn. App. 386, 400, 824 P.2d 1238 (1992) (stating that the purpose underlying RAP 10.3(a)(5) and related rules is to "efficiently and expeditiously" allow the court and opposing counsel to review the accuracy of the facts and relevant legal authority). Specific record citations are not expressly required in a party's answer to amici, and the District largely cures that failure by providing citations in its opposition to the motion to strike. RAP 10.4(f) ("Reference to Record. A reference to the record *should* designate the page and part of the record." (emphasis added) (boldface omitted)).

Those record citations, however, do not support all of the challenged portions of the District's briefing. *See Dep't of Labor & Indus. v. Lanier Brugh*, 135 Wn. App. 808, 822-23, 147 P.3d 588 (2006) (presenting facts outside the record is inappropriate for consideration under RAP 9.1's requirements for the composition of the record).[5]

Therefore, we strike two portions of the District's answer to amicus curiae of the ACLU that were not part of the record.

First, on page 15 of the District's answer, M.G. asks us to strike the paragraph beginning, "There was no evidence produced in any prior . . . ." Resp. to Br. of ACLU of WA Found. at 15. This paragraph references gang-style haircuts, wearing of gang colors, and potential for gang violence. The record supports all but one statement in this

---

[5] Though we have at times taken judicial notice of facts outside the record provided by amicus, *e.g.*, *New Meadows Holding Co. v. Washington Water Power Co.*, 102 Wn.2d 495, 502, 687 P.2d 212 (1984), no party in the present case has asked us nor would it be proper to do so here. *See Cameron v. Murray*, 151 Wn. App. 646, 658-59, 214 P.3d 150 (2009) (noting courts may take judicial notice of facts outside the record if they meet the criteria under ER 201 or if they are considered legislative facts).

paragraph—that "M.G. is a well-known member of the Norteño gang." *Id*. The record does not appear to support this assertion.

Similarly, the second statement sought to be struck is on pages 17 to 18 of the District's answer. M.G. seeks to strike the paragraph starting, "The decision to not allow M.G. among the general population . . . ." *Id*. at 17. This paragraph discusses the ACLU's assertion that M.G.'s gang affiliation was "perceived," while the District contends it was "real gang" activity. *Id*. at 17-18. The District's support for its claim that M.G. engaged in real gang activity and is a well-known gang member appears to come from a motion in the Court of Appeals. In the court below, the District moved to dismiss the case as moot; it included declarations stating that after his suspension, M.G. was subsequently involved in a gang shooting where he shot and killed a rival gang member and was the target of retaliation. Here, the District's reference to these facts is not connected to mootness, which was the original rationale for allowing the facts into evidence at the Court of Appeals. If the District wished to rely on these facts outside the context of mootness, it should have moved to supplement the record under RAP 9.11. It did not. Accordingly, these facts exist outside the record and thus the motion to strike is granted in part. RAP 10.7.

## CONCLUSION

The District's refusal to allow M.G. to return to Eisenhower was a disciplinary decision. RCW 28A.600.015(1) and WAC 392-400-430(8) outline the procedures that must be followed when subjecting students to disciplinary suspensions. We hold that the

District failed to follow these procedures, violating M.G.'s right to due process and effectively indefinitely suspending M.G. from Eisenhower where he was entitled to return. We further find that compensatory education is a potential equitable remedy for violations of student disciplinary statutes and regulations. Accordingly, we affirm the Court of Appeals and remand to the superior court to determine the appropriate remedy.

_____
Madsen, J.

WE CONCUR:

_____    _____
Gonzáles, C.J.                        Gordon McCloud, J.

_____    _____
Johnson, J.                           Yu, J.

_____    _____
Owens, J.                             Montoya-Lewis, J.

_____    _____
Stephens, J.                          Whitener, J.