[No. 63401-1-I.   Division One.   August 17, 2009.]

HAZEL D. CAMERON, *Individually and as Personal Representative, Appellant*, v. JOHN ORTON MURRAY ET AL., *Respondents.*

648

*Robert S. Bryan* (of *Shafer Moen & Bryan, PS*), for appellant.

*Ronald J. Meltzer* (of *Sinsheimer & Meltzer, Inc.*), for respondent John Orton Murray.

*Lisa A. Liekhus* (of *Law Offices of Steven L. Abel*), for respondent Jacob William Franks.

*Donald C. Harrison*; and *M. Colleen Barrett* (of *Barrett & Worden, PS*), for respondent John Solano Laney.

*James E. Kennedy* (of *Kennedy Schuck & Miller, PLLC*), for respondents Charles Michael Cook and Diedra Cook.

*Sara E. Metteer* (of *Wilson Smith Cochran Dickerson*), for respondent Nicholas Ryan Homes.

*Timothy A. Reid*, for respondent Rodney Cameron Craig.

*Gordon G. Hauschild* (of *Jackson & Wallace*), for respondents Nicole Korman, Todd Korman, Meyers Distributing Company, Joanne Meyers, and John D. Meyers.

*Keith M. Kubik* (of *Law Offices of Keith M. Kubik*), for respondent Alaska Distributors Company.

¶1 BECKER, J. — Should civil liability be imposed upon those who plan and furnish beer for a high school graduation keg party where criminal violence erupts? The appellant Hazel Cameron is the mother of a boy who died as a result of being assaulted at a kegger. She requests that a jury be allowed to decide whether the assault was a foreseeable result of providing unlimited beer to teenagers in a remote location without supervision. But to maintain either a common law or statutory cause of action for assault caused by the negligent furnishing of alcohol to minors, the plaintiff must prove that the assailant had violent tendencies known to the furnishers. Because the record lacks such proof, the trial court did not err in dismissing the case on summary judgment.

## FACTS

¶2 Viewed in the light most favorable to Cameron, the record shows that in May 1998, Lake Washington High School seniors Nicholas Homes, Jacob Franks, Charles Cook, John Laney, Bradley Mann, and John Murray planned to

celebrate their high school graduation by having a keg party at Kachess State Park. More than 100 graduating seniors were expected to attend the party. Homes' cousin, Rodney Craig, was a sales representative for Meyers Distributing Company, a wholesale beer distributor. After collecting money from various seniors, Homes and Franks met Craig in a restaurant parking lot and bought six kegs of beer, each containing 15.5 gallons. This was enough to provide each one of 100 attendees almost 1 gallon of beer apiece.

¶3 One person who arrived at the party was Glen Anderson, the son of Cameron. Murray, Franks, and Mann confronted Anderson because he was only a junior. Murray hit Anderson on the forehead with a heavy glass beer mug. The wound initially appeared to be minor, and Anderson had it stitched in an emergency room. But four months later, he collapsed in a coma. He died in 2004 after surviving for more than four years in a persistent vegetative state. An autopsy revealed that the cause of death was the head wound at the keg party, and the death was determined to be a homicide.

¶4 In June 2007, Cameron sued Craig, Murray, Franks, Mann, Laney, Cook, Homes, Meyers Distributing (along with its officers, directors, and employees), and Alaska Distributors Company, which had bought Meyers Distributing. The complaint sought to make all defendants jointly and severally liable for Anderson's death.

¶5 The court dismissed Meyers Distributing and its officers, directors, and employees under the 2006 retroactive dissolved corporation statute of repose. RCW 23B-.14.340. Alaska Distributors Company remained in the case as the successor to Meyers for its alleged liability for supplying the kegs. Murray, Franks, and Mann were the alleged assailants, but Mann could not be pursued because he was in bankruptcy proceedings. Craig, Homes, Laney, Franks, and Cook were alleged to have been negligent in soliciting, conspiring, and directly participating in the acquisition of the beer; negligent under RCW 5.40.050 for violating criminal statutes regulating alcohol sales; and

negligent for exposing others to a foreseeable high risk of harm from criminal activity.

¶6 In June 2008, the trial court granted summary judgment to defendants Craig, Laney, and Homes. The court certified its orders as final under CR 54(b) and RAP 2.2(d). The Supreme Court denied Cameron's motion for direct review and transferred the matter to this court.

¶7 The trial court entered extensive findings of fact to support its certification that there is no just reason for delaying the appeal. In particular, the court noted that the evidence is already very old; and without an immediate appeal on the central issue, the potential for two or more trials against splintered groups of defendants is great, with an accompanying risk of piecemeal depositions, inconsistent rulings, appeals, and further trials. We conclude there is a demonstrated basis for the trial court's certification that there is no just reason for delay. *See Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 503, 798 P.2d 808 (1990). We accept the certification and treat the dismissals as final and appealable.

¶8 Decisions made on summary judgment are reviewed de novo. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## COMMON LAW DUTY

¶9 To establish an actionable negligence claim, a plaintiff must establish the existence of (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury. *Christen v. Lee*, 113 Wn.2d 479, 488, 780 P.2d 1307 (1989). Under the common law, it is not a tort to provide intoxicating liquor to " 'ordinary able-bodied men,' " and in the absence of a statute, " 'there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished.' " *Christen*, 113 Wn.2d at 494 (quoting *Halvorson v. Birchfield Boiler, Inc.*, 76

Wn.2d 759, 762, 458 P.2d 897 (1969)). Washington once had a "Dramshop Act" establishing such a cause of action. Since its repeal, our Supreme Court has followed the common law rule and has recognized a common law duty not to furnish intoxicating liquor only when the person served is obviously intoxicated, in a state of helplessness, or in a special relationship to the furnisher of the intoxicants. *Christen*, 113 Wn.2d at 494.

¶10 In this case, as in the two consolidated cases addressed in *Christen*, the type of harm allegedly caused by the furnishing of the liquor is a criminal assault. Criminal assault is "not within the general field of danger traditionally covered by the duty not to furnish intoxicating liquor to an obviously intoxicated person." *Christen*, 113 Wn.2d at 496. Criminal assault is not a foreseeable result unless the drinking establishment "had some notice of the possibility of harm from prior actions of the person causing the injury, either on the occasion of the injury, or on previous occasions." *Christen*, 113 Wn.2d at 498. Here, there is no evidence that those who planned the kegger and furnished liquor for it were aware that any of Anderson's assailants had a propensity for violence. The respondents, accordingly, contend that *Christen* disposes of Cameron's common law negligence claims.

¶11 Cameron contends, however, that the common law rule should be extended to recognize a unique propensity for violence that inheres in a teenage keg party irrespective of what is known about the propensities of any of the individuals present. "The essence of this case is that the defendants intended from the beginning, strove for and achieved creation of, an environment of danger: an unstructured clandestine forum in the woods where a significantly large crowd designedly composed exclusively of teenagers was furnished an almost unlimited volume of beer for the very purposes of overconsumption and intoxicated revelry." Br. of Appellant at 24.

¶12 Cameron draws an analogy to *Parrilla v. King County*, 138 Wn. App. 427, 157 P.3d 879 (2007). In *Parrilla*, a Metro bus driver responded to a passenger's bizarre behavior by getting out of the bus and leaving the engine running. The erratic passenger took the wheel and drove the bus down a busy street, crashing it into several vehicles, including one driven by plaintiff Parrilla. This court held that under the circumstances a jury could find a breach of the duty owed to Parrilla even though the damage was caused by the criminal act of a third party. A duty to guard against a third party's criminal conduct "may exist where an actor's affirmative act has exposed another to a recognizable high degree risk of harm through such misconduct, which a reasonable person would take into account." *Parrilla*, 138 Wn. App at 435 (citing RESTATEMENT (SECOND) OF TORTS § 302 B (1965); *Tae Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 15 P.3d 1283 (2001)). The bus driver's affirmative act of leaving the bus unattended and idling exposed third parties such as Parrilla to foreseeable injury at the hands of the noticeably unhinged passenger:

> Here, the bus driver left the bus with the engine running next to the curb of a public street, with Carpenter on board. Significantly, the bus driver was fully aware that Carpenter was acting in a highly volatile manner. Indeed, Carpenter had displayed a tendency toward criminal conduct by refusing the driver's requests that he leave the bus and by hitting the windows of the bus with his fists. Furthermore . . . the 14-ton bus here was a vehicle uniquely capable of inflicting severe damage. The risk of harm arising from the criminal operation of such a vehicle was recognizably high. Moreover, the bus was stolen by Carpenter mere moments after it was left unattended, not at a remote future time by an unknown individual . . . . A jury could well find that Carpenter's actions were reasonably foreseeable under these circumstances.
>
> In sum, pursuant to the facts alleged by the Parrillas, an instrumentality uniquely capable of causing severe injuries was left idling and unguarded within easy reach of a severely impaired individual. The bus driver was aware of these circumstances. Assuming the truth of these averments, the bus

driver's affirmative act created a high degree risk of harm through Carpenter's misconduct, which a reasonable person would have taken into account.

*Parrilla*, 138 Wn. App. at 440-41.

¶13 Cameron contends it is similarly foreseeable that a teenage kegger will produce criminal violence. Like a large bus, a kegger can be characterized as "an instrumentality uniquely capable of causing severe injuries" when left unguarded and in the hands of members of a demographic group that is notoriously incapable of self-control when affected by alcohol.

¶14 The comparison is not inapt. Nevertheless, *Christen* is the closer case and the precedent we must follow in a case concerning an alcohol furnisher's liability for an assault by an intoxicated person. Liability will not be imposed unless the furnisher had more specific notice that the intoxicated person has violent propensities. It is not enough to rely on the general notion that bad things happen when crowds of young people get very drunk together. Even in *Parrilla*, the closest Washington case Cameron can offer in her attempt to get past *Christen*, the court found it significant that (1) the driver was specifically aware of the passenger's impairment and (2) the harm was caused immediately upon allowing the passenger to get control of the bus, not at "a remote future time by an unknown individual." *Parrilla*, 138 Wn. App. at 440.

¶15 Cameron also cites a Rhode Island decision in favor of a plaintiff who was attacked with a baseball bat at a high school graduation party. The court allowed suit against the host, who had allowed consumption of alcohol by underage drinkers. *Martin v. Marciano*, 871 A.2d 911 (R.I. 2005). But in *Martin*, there was evidence that a fight had erupted earlier in the evening between the assailant and the plaintiff's friends, and the assailant had been thrown out, only to return with reinforcements one-half hour later. *Martin*, 871 A.2d at 914. Cameron does not have similar evidence of prior misconduct by the assailants. Also, the drunken

assault in *Martin* occurred right under the nose of the host at her own house, adding the feature of premises liability that *Christen* recognized as an important factor where the common law rule might be extended to cover cases of criminal assault. Indeed, *Christen* recognizes, at least as far as drinking establishments are concerned, that liability may result from the failure to intervene as soon as possible in an assault committed on the premises by an intoxicated patron. *Christen*, 113 Wn.2d at 504-06. There is no aspect of premises liability in the present case.

¶16 One of the two cases decided in *Christen* was *Long v. Coates*, where there was evidence that the defendant, age 20 at the time, drank 12-15 beers and was obviously drunk before going to a bar called "McDougall's." No one at the bar made any effort to find out whether he was a minor. He was served several drinks. After leaving the bar, Coates caused a car accident and was pulled over by an off duty patrolman. Coates stabbed the patrolman. *Christen*, 113 Wn.2d at 485-86. The Supreme Court affirmed summary judgment dismissal of the patrolman's case against McDougall's because there was no evidence that the defendant was known at the bar to be a violent troublemaker or that his behavior that night gave any hint of the violence to come. *Christen*, 113 Wn.2d at 498. In holding the bar free of liability, the court acknowledged its reluctance to extend common law liability beyond its well-recognized exceptions, especially in view of the extensive involvement of the legislature in making policy judgments about liability for the furnishing of alcohol:

> In sum, the history of the duty owed by a furnisher of intoxicating liquor in this state evinces a well considered and reasoned reluctance on the part of this court, in light of the Legislature's repeal of this state's dramshop act, to now judicially decree common law liability in cases other than those fitting within the well-recognized exceptions to the common law rule.

*Christen*, 113 Wn.2d at 495.

¶17 *Christen* is dispositive. In the absence of evidence that alleged assailants Murray, Franks, and Mann gave some notice that they, as individuals, were likely to become violent, as a matter of law their assault upon Anderson was not within the scope of any common law duty owed by those who planned the kegger and furnished the beer.

## STATUTORY DUTY

¶18 Cameron's next argument is that the defendants were negligent based on their violation of various statutes forbidding sale of alcohol to minors, purchase of alcohol by minors, furnishing of kegs to minors, and the unlicensed or unregistered sale of kegs. But again, she encounters *Christen* and its holding that a criminal assault is not a foreseeable result of furnishing alcohol to minors.

¶19 To determine whether a duty of care exists based upon a statutory violation, Washington courts apply the *Restatement* test, which, among other things, requires that the injured person be within the class of persons the statute was enacted to protect. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 475 & n.2, 951 P.2d 749 (1998); RESTATEMENT (SECOND) OF TORTS § 286. A court looks to the language of the statute to ascertain whether the plaintiff is a member of the protected class. "When a duty is found to exist from the defendant to the plaintiff then concepts of foreseeability serve to define the scope of the duty owed." *Schooley*, 134 Wn.2d at 475.

¶20 In *Schooley*, a grocery store sold alcoholic beverages to minors. These minors provided the alcohol to other minors. Among those drinking was Schooley, who later dove into a pool that was only two feet deep. She fractured her spinal cord. The court concluded that a jury could be permitted to hold the grocery store liable for her injuries. As a minor, Schooley was in the class of persons that statutes prohibiting the sale of liquor to minors were designed to protect. *Schooley*, 134 Wn.2d at 475-76. "Because minors who drink commonly do so with other minors, protecting all

those injured as a result of the illegal sale of alcohol to minors is the best way to serve the purpose for which the legislation was created, to prevent minors from drinking." *Schooley*, 134 Wn.2d at 476; *see also Crowe v. Gaston*, 134 Wn.2d 509, 951 P.2d 1118 (1998).

¶21 While the above-quoted excerpts from *Schooley* might sound promising for Cameron's case, the fact is that *Schooley* cites *Christen* favorably and does nothing to undermine *Christen*'s holding that guarding against a criminal assault is not within the scope of the statutory duty. In *Christen*, in the case of minor defendant Coates, the court held that the legislature did not intend to go so far as to protect against intentional criminal assault by a minor to whom liquor has been illegally furnished:

> Concerning the statute against furnishing intoxicating liquor to a minor, the courts of this state have held that a violation of this proscription can constitute negligence per se. These cases, however, also involve automobile accidents. Furthermore, we have previously accepted the prevention of driver error as the obvious and legitimate purpose behind legislation establishing 21 as the legal drinking age. Thus, we likewise conclude that the general field of danger covered by this statutory duty is that of driver error and that a criminal assault is not a foreseeable result from a violation thereof. Again, we perceive the Legislature as intending to protect against foreseeable hazards and conclude, therefore, that the sale to minors statute was not intended to protect against the particular hazard of a subsequent criminal assault by the consumer of the alcohol.

*Christen*, 113 Wn.2d at 503-04.

¶22 Thus, *Christen* disposes of Cameron's statutory-based claim along with her common law claim, without regard to whether the defendants are classified as social hosts or commercial vendors.

## EXHIBITS

¶23 To support her argument that criminal assault is a reasonably foreseeable outcome of a teenage keg party,

Cameron submitted exhibit 6, entitled "Judicial Notice Material from the community demonstrating the long and well-known relationship between youthful alcohol consumption and violence, as retrieved from the Internet." Attached were several scientific articles linking underage drinking and aggression, along with a copy of a letter to parents from the Lake Washington High School principal dated May 27, 1998. The letter warned against inappropriate year-end "celebrations."

> If we are candid, we know that alcohol, drugs, violence, vandalism, and teenage parties are problems in our society and our local community—and are real pressures that our teenagers face today. Sadly, this is all too often the time of year we hear media reports of tragic accidents or events involving teenagers.

Cameron wanted the trial court to use these materials to take "judicial notice" that violence foreseeably accompanies teenage drinking parties.

¶24 The trial court granted the defendants' motion to strike these materials from the record. Cameron assigns error to this ruling. Her objection is well taken. To begin with, materials submitted to the trial court in connection with a motion for summary judgment cannot actually be stricken from consideration as is true of evidence that is removed from consideration by a jury; they remain in the record to be considered on appeal. Thus, it is misleading to denominate as a "motion to strike" what is actually an objection to the admissibility of evidence that could have been preserved in a reply brief rather than by a separate motion. More importantly, Cameron was not offering the articles about drinking and violence as proof of her claim to be considered by the finder of fact. Rather, she was offering them to support her policy argument for loosening the lid *Christen* has placed on what is reasonably foreseeable. Her materials do not constitute "adjudicative facts" of which judicial notice may be taken under ER 201(a)-(d) only when strict criteria are met. But conceivably they might constitute "legislative facts," described as background in-

formation a court may take into account "when determining the constitutionality or proper interpretation of a statute, or when extending or restricting a common law rule." 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE ER 201 author's cmt. (1) (2008-09 ed.). This category of judicial notice is not often mentioned or employed, but it did receive extensive discussion in a case where the Supreme Court affirmed this court's decision to eliminate the cause of action of alienation of affections—itself a judicially created common law cause of action. *Wyman v. Wallace*, 94 Wn.2d 99, 102-03, 615 P.2d 452 (1980).

> In making a policy judgment such as the continuation of the doctrine of alienation of affections, it is certainly preferable to have a fully developed trial record. However, trial courts and appellate courts can take notice of "legislative facts"—social, economic, and scientific facts that "simply supply premises in the process of legal reasoning." *Houser v. State*, 85 Wn.2d 803, 807, 540 P.2d 412 (1975); E. Cleary, *McCormick's Evidence* 759, 768-69 (2d ed. 1972). Under this doctrine, a court can take notice of scholarly works, scientific studies, and social facts. *See* E. Cleary, *supra* at 759, 768-69; *see, e.g., Planned Parenthood v. Danforth*, 428 U.S. 52, 71, 75, 49 L. Ed. 2d 788, 96 S. Ct. 2831 (1976); *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973); *Houser v. State, supra* at 807-09. This legislative fact doctrine is expressly recognized by both the state and federal rules of evidence. In establishing strict requirements for judicial notice of "adjudicative facts," the state and federal rules carefully ensure that these requirements will not also restrict notice of "legislative facts." *See* ER 201(a), Comment; Fed. R. Evidence 201(a), Advisory Committee's note. As the commentaries to these rules explain, it is essential that courts have the unrestricted ability to employ judicially noticed "legislative facts" in formulating legal rules. Fed. R. Evidence 201(a), Advisory Committee's note; ER 201(a), Comment.
>
> Judicial notice of legislative facts is frequently necessary when, as in the present case, a court is asked to decide on policy grounds whether to continue or eliminate a common law rule. ER 201(a), Comment; E. Cleary, *supra* at 759, 768-69.

*Wyman*, 94 Wn.2d at 102-03 (citation omitted). The materials submitted by Cameron resemble the materials discussed in the concurrence/dissent in *Christen* written by Justice Utter, who was also the author of *Wyman*. *See Christen*, 113 Wn.2d at 517-20 (reviewing research and other literature suggesting a causal connection between alcohol and violence).

¶25 Because ER 201 does not restrict notice of the material contained in Cameron's exhibits, we reverse the order granting the motion to strike. But notwithstanding the information and insights contained in those exhibits, the precedent is well established in Washington case law that in the absence of particularized notice, criminal assault is not a foreseeable result of providing alcohol. The liability belongs to the assailant, not to those who may have furnished alcohol to the assailant. For this reason, the trial court correctly granted the defense motions for summary judgment.

¶26 Affirmed.

DWYER, A.C.J., and LAU, J., concur.

Review denied at 168 Wn.2d 1018 (2010).