IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DALE SMITH, <br><br> Appellant, <br><br> v. <br><br> CHEVRON U.S.A., Inc.; CHEVRON PHILLIP CHEMICAL COMPANY LP; CHAMBERLIN DISTRUBING COMPANY, INC. d/b/a CHAMBERLIN AGRICULTURE; NORTHWEST WHOLESALE, INC.; SYNGENTA CROP PROTECTION, LLC; and SYNGENTA AG; <br><br> Respondents. | No. 83556-4-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

CHUNG, J. — More than 20 years after he was diagnosed with Parkinson's disease, Dale Smith filed a lawsuit raising claims of strict product liability, negligence, and breach of warranty of merchantability against manufacturers and sellers of herbicides containing the chemical paraquat. The manufacturers and sellers filed CR 12(b)(6) motions to dismiss. The trial court granted the motions after concluding that the claims were time-barred and Smith lacked privity for the warranty claim.

We conclude the manufacturers and sellers failed to demonstrate that no set of facts could conceivably be raised by the complaint to support a legally sufficient claim. Hypothetical situations exist wherein Smith could establish the facts necessary for the discovery rule to apply, so that his product liability claims

are within the statute of limitations. Further, for breach of warranty claims for noneconomic loss under the Washington Product Liability Act (WPLA), ch. 7.72 RCW, Smith need not have contractual privity with the manufacturers; therefore, the trial court improperly dismissed the breach of warranty claims on this ground. Finally, Smith's warranty claims are subject to the WPLA's three-year statute of limitations and the discovery rule set out in RCW 7.72.060(3), not the four-year statute of limitations for contractual warranty claims.

Therefore, the trial court erred in granting the CR 12(b)(6) motions to dismiss. We reverse and remand for further proceedings.

FACTS

Dale Smith worked in an apple orchard from 1973 to 1980, and as a groundskeeper for schools from 1984 to 1998. During his employment, Smith sprayed herbicides containing the chemical paraquat.

Smith was diagnosed with Parkinson's disease (Parkinson's) in 1997. Alleging that exposure to paraquat led to his development of Parkinson's, in June 2021, Smith filed this lawsuit against Chevron, Chamberlin, Northwest Wholesale, and Syngenta (collectively Chevron or Defendants) as manufacturers and retailers of paraquat-containing products. Chevron and Syngenta manufactured herbicides containing paraquat. Chamberlin and Northwest Wholesale were retail sellers of the products. Smith raised claims of product liability under both design defect and failure to warn theories, breach of warranty, and negligence.

2

Smith's complaint detailed the history of paraquat usage, beginning in 1964, "to kill broadleaf weeds and grasses before the planting or emergence of more than 100 field, fruit, vegetable, and plantation crops; to control weeds in orchards; and to desiccate (dry) plants before harvest." The complaint stated that Defendants sold paraquat as a liquid concentrate designed to be diluted with water and sprayed onto weeds. These concentrates also included surfactants "to increase the ability of the herbicide to stay in contact with the leaf, penetrate the leaf's waxy surface, and enter into plant cells." Smith alleged that when used as directed or in a reasonably foreseeable manner, people spraying paraquat would be exposed to the chemical as a result of spray drift, spills, splashes, and leaks.

According to the complaint, paraquat creates oxidative stress that contributes to the degeneration and death of cells in both plants and animals. Paraquat "is a strong oxidant, and it readily undergoes 'redox cycling' in the presence of molecular oxygen." This redox cycling then interferes with life-sustaining cellular functions. Moreover, Smith alleges "[b]ecause the redox cycling of paraquat can repeat indefinitely in the conditions typically present in living cells, a single molecule of paraquat can trigger the production of countless molecules of destructive superoxide radical." Additionally, inclusion of surfactants in the herbicide concentrates likely increased paraquat's toxicity to humans. The complaint contends that paraquat's redox properties have been known since at least the 1930s, and the resulting toxicity to plants and animals has been known since the 1960s.

3

The complaint links paraquat to Parkinson's because the redox properties of paraquat make it toxic to dopaminergic neurons that produce dopamine in the brain. "Once dopaminergic neurons die, they are not replaced; when enough dopaminergic neurons have died, dopamine production falls below the level the brain requires for proper control of motor function, resulting in the motor symptoms of Parkinson's." The complaint notes that scientists artificially produce features of Parkinson's in animals using paraquat, and in vitro and animal studies have shown that paraquat causes oxidative stress resulting in the death of dopaminergic neurons and Parkinson's symptoms. It also states that epidemiological studies "have found an association between paraquat exposure and Parkinson's, including multiple studies finding a two- to five-fold or greater increase in the risk of Parkinson's in populations with occupational exposure to paraquat compared to populations without such exposure."

Smith contends that he developed Parkinson's as a direct and proximate result of his exposure to paraquat during his employment in an apple orchard and as a groundskeeper. The complaint specifies that prior to April 26, 2021, Smith had never been informed that his Parkinson's was or could have been caused by paraquat exposure; he had never read or heard of any articles in newspapers or scientific journals that associated Parkinson's with paraquat; and he had never read or heard of any lawsuits alleging that paraquat causes Parkinson's. Additionally, Smith claims that when he was using paraquat, he was not aware that exposure to paraquat could cause latent injury or that precautions were necessary to prevent any latent injury.

4

Chevron and Syngenta filed separate CR 12(b)(6) motions for failure to state a claim. Defendants Northwest Wholesale and Chamberlin joined in both motions to dismiss. The trial court determined that the product liability claims were barred by the statute of limitations. According to the court, "[t]he Complaint itself sets forth a long and robust history of the alleged connection between paraquat exposure and Parkinson's Disease; a diligent inquiry would have revealed all of the facts upon which Mr. Smith now relies in his complaint decades ago." The court also concluded that the breach of warranty claims were time-barred and that there was a lack of contractual privity between Smith and Defendants. The trial court granted the motions and dismissed Smith's claims with prejudice. Smith filed a motion for reconsideration, which the court denied.

Smith appeals.

## ANALYSIS

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." CR 12(b)(6). A CR 12(b)(6) motion "questions only the legal sufficiency of the allegations in a pleading, asking whether there is an insuperable bar to relief." Alexander v. Sanford, 181 Wn. App. 135, 142, 325 P.3d 341 (2014). "A CR 12(b)(6) motion may be granted only where there is not only an absence of facts set out in the complaint to support a claim of relief, but there is no hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim." Worthington v. Westnet, 182 Wn.2d 500, 505, 341 P.3d 995 (2015).

Under CR 12(b)(6), "a plaintiff states a claim upon which relief can be granted if it is <u>possible</u> that facts could be established to support the allegations in the complaint." <u>McCurry v. Chevy Chase Bank, FSB</u>, 169 Wn.2d 96, 101, 233 P.3d 861 (2010). A complaint survives a CR 12(b)(6) motion if any set of facts could exist that would justify recovery. <u>FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.</u>, 180 Wn.2d 954, 963, 331 P.3d 29 (2014). The court presumes the truth of the plaintiff's allegations and may consider hypothetical facts not included in the record. <u>Keodalah v. Allstate Ins. Co.</u>, 194 Wn.2d 339, 345, 449 P.3d 1040 (2019). Motions to dismiss are granted sparingly and with care. <u>Worthington</u>, 182 Wn.2d at 506. A trial court's ruling on a motion to dismiss for failure to state a claim presents a question of law reviewed de novo. <u>Id.</u>

I.    <u>Statute of Limitations and the Discovery Rule</u>

Defendants successfully argued to the trial court that Smith's claims are time-barred under the statute of limitations. Smith contends that his product liability claims were timely based on the discovery rule.

Product liability claims may not be brought "more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause." RCW 7.72.060(3). This statute of limitations incorporates the "discovery rule" and is intended to allow plaintiffs the chance to ascertain the harm and its cause. <u>North Coast Air Servs., Ltd. v. Grumman Corp.</u>, 111 Wn.2d 315, 326-28, 759 P.2d 405 (1988); <u>see</u> <u>Matter of Estates of Hibbard</u>, 118 Wn.2d 737, 751-52, 826 P.2d 690 (1992). "[C]ourts apply the [discovery rule] where the nature of the plaintiff's injury makes it extremely difficult, if not

impossible, for the plaintiff to learn the factual elements of the cause of action within the specified limitation period." Crisman v. Crisman, 85 Wn. App. 15, 21, 931 P.2d 163 (1997), as amended on denial of reconsideration (Feb. 14, 1997).

In product liability cases involving the discovery rule, the claim accrues and the statute of limitations begins to run when the claimant "discovered, or in the exercise of due diligence should have discovered, a factual causal relationship of the product to the harm." North Coast, 111 Wn.2d at 319. "[W]hen a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm." Green v. A.P.C. (American Pharmaceutical Co.), 136 Wn.2d 87, 96, 960 P.2d 912 (1998).

"The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." Allen v. State, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). "A plaintiff 'should have known' when he or she is placed on notice that the statutory elements are in place, and the plaintiff is charged with what a reasonable or diligent inquiry would have discovered at that time." Clare v. Saberhagen Holdings, Inc., 129 Wn. App. 599, 605, 123 P.3d 465 (2005). The claimant must know that the cause in fact was an alleged defect. North Coast, 111 Wn.2d at 319. "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action." Allen, 118 Wn.2d at 758.

"The point at which a plaintiff discovers or should have discovered that he or she is harmed and its cause is a question of fact for the jury to decide." Stark

v. Celotex Corp., 58 Wn. App. 940, 943, 795 P.2d 1165 (1990). The causal connection between the injury and the defect is usually a question of fact. North Coast, 111 Wn.2d at 319. What a person knew or should have known at a given time is a question of fact. August v. U.S. Bancorp, 146 Wn. App. 328, 343, 190 P.3d 86 (2008). The appropriate inquiries that an injured plaintiff must make depend on the circumstances of the case, so due diligence is a question of fact. Winbun v. Moore, 143 Wn.2d 206, 219, 18 P.3d 576 (2001) (citing Lo v. Honda Motor Co., Ltd., 73 Wn. App. 448, 464, 869 P.2d 114 (1994)).

"Because the statute of limitations is an affirmative defense, the burden is on the defendant to prove those facts that establish the defense." Mayer v. City of Seattle, 102 Wn. App. 66, 76, 10 P.3d 408 (2000). However, when relying on the discovery rule, the plaintiff bears the burden of proving that the facts constituting the claim were not and could not have been discovered by due diligence within the statute of limitation. Clare, 129 Wn. App. at 603. Thus, for a CR 12(b)(6) motion based on a statute of limitations affirmative defense involving the discovery rule, the moving party has the burden to demonstrate that no set of facts exists where the discovery rule would toll the statute of limitations.

Smith's complaint alleges that prior to April 26, 2021, he was unaware that exposure to paraquat could cause latent injury including Parkinson's, and he had never been informed by a doctor, read any publications, or heard of any lawsuits relating to a link between paraquat and Parkinson's. For the purposes of a CR 12(b)(6) motion, these alleged facts are considered true. Based on this

information, the causes of action accrued and the statute of limitations began to run on April 26, 2021.

To show that no set of facts or hypothetical situations exist where Smith did not know or could not discover with due diligence the elements of his product liability and negligence claims, Chevron claims that "the relevant materials were available to Smith long before he filed suit; he simply failed to access them." Chevron points to the history of paraquat's known toxicity and alleged link to Parkinson's contained within Smith's complaint as evidence that Smith should have discovered the facts underlying his claim sometime between 1997 and 2018.

In the motion to dismiss, Chevron cited to news articles, news websites, and magazines outside of the complaint that have covered the link between paraquat and Parkinson's since 2005 and suggested that the trial court may take judicial notice of the existence of the articles under ER 201(b)(2). Chevron argued the existence of these articles—such as "Hot on Parkinson's Trail," in the Los Angeles Times, "Studies line up on Parkinson's and pesticides link," from Reuters, and "Are You at Risk for Parkinson's?" from Forbes—demonstrates "what any diligent inquiry would have shown more than three years before Plaintiff filed this suit."

Chevron merely footnoted the articles and their locations in internet archives.[1] The articles themselves are not included as part of the record. Thus,

---

[1] Chevron's motion to dismiss cites these articles in a footnote, as follows:

not only is the content of the articles not properly before this court, Chevron goes even further and asserts that the court may take judicial notice of the existence of these articles under ER 201(b)(2), without providing any legal analysis.

While generally, a court may not go beyond the face of the pleadings when ruling on a CR 12(b)(6) motion, a court may take judicial notice of facts under ER 201(b)(2). Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 844, 347 P.3d 487 (2015). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b)(2). If these "strict criteria" are met, ER 201 allows the court to take judicial notice of "adjudicative facts." Cameron v. Murray, 151 Wn. App. 646, 658-59, 214 P.3d 150 (2009).

Chevron provides no authority to support its argument that news and magazine articles are adjudicative facts that satisfy the ER 201(b)(2) criteria. Indeed, Washington law is to the contrary. In a case involving wrongful death and

---

E.g., Marla Cone, "Hot on Parkinson's Trail," LOS ANGELES TIMES, Nov. 27, 2005, https://www.latimes.com/archives/laxpm-2005-nov-27-me-parkinsons27-story.html; Maggie Fox, "Studies line up on Parkinson's and pesticides link," REUTERS, Apr. 26, 2007, https://www.reuters.com/article/picks-parkinsons-pesticides-dc-idJPN2222543520070423; Robert Preidt, "Pesticides Linked to Parkinson's," ABC NEWS, Sept. 15, 2009, https://abcnews.go.com/Health/Healthday/pesticides-linkedparkinsons/story?id=8585714; Melanie Haiken, "Are You At Risk for Parkinson's? New Risk Factors Found," FORBES, Apr. 9,2012, https://www.forbes.com/sites/melaniehaiken/2012/04/09/are-you-at-risk-for-parkinsons-new-risk-factors-found/?sh=1366b01f1ae6; Alexandra Sifferlin, "Study Links Exposure to Bug and Weed Killers to Higher Risk for Parkinson's," TIME, May 28, 2013, https://healthland.time.com/2013/05/28/study-links-exposure-to-bug-and-weed-killersand-higher-risk-for-parkinsons/.

negligence claims arising from a high school graduation keg party, this court determined that "several scientific articles linking underage drinking and aggression" did not constitute "adjudicative facts" of which judicial notice may be taken. Id. at 658-59.[2] Like the scientific articles in Cameron, Chevron's news articles do not meet the strict criteria for judicial notice under ER 201(b)(2). The articles are not undisputed facts generally known within the jurisdiction of the trial court. Moreover, two of the internet links to the cited articles provided in the briefing no longer work. Given this, even the existence of the articles is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" as required by ER 201(b)(2). Moreover, the availability of information about paraquat's relationship to Parkinson's is a factual issue pertaining to an affirmative defense and requires proof. We decline to take judicial notice of the news articles.

Regardless, taking judicial notice of the existence of the articles would not establish that no set of facts exists such that, with due diligence, Smith necessarily should have discovered the facts supporting his product liability and negligence actions. Rather, the titles of the articles do not specifically link Parkinson's to paraquat. The titles reference Parkinson's risk factors more generally or suggest a possible link between Parkinson's and pesticides. Even if

---

[2] In Cameron, while the articles did not meet the "strict criteria" for the court to take judicial notice of them as adjudicative facts, the court did determine that it could take notice of them as legislative facts. "Judicial notice of legislative facts is frequently necessary when, as in the present case, a court is asked to decide on policy grounds whether to continue or eliminate a common law rule." Cameron, 151 Wn. App. at 659 (quoting Wyman v. Wallace, 94 Wn.2d 99, 102-03, 615 P.2d 452 (1980)) (other citations omitted). But here, Defendants have argued only that the articles are adjudicative facts, so ER 201(b)(2)'s "strict" criteria apply.

Smith had seen the titles of these articles in the years prior to his lawsuit, he would not necessarily have known they discussed paraquat.

Chevron cites Allen v. State, 118 Wn.2d at 758, to argue that Smith could have discovered the basis for his cause of action through due diligence. In Allen, the plaintiff sued the State for paroling two men who later murdered her husband. Id. at 754. The trial court granted summary judgment and dismissed the suit as time-barred. Id. The Supreme Court affirmed after determining that the plaintiff could have easily discovered the crucial information that her husband's killers had been identified, had been on parole when they killed her husband, and had been convicted: "Even if Allen had done no more than read local newspapers, or talk with friends who had, she would have learned the facts underlying her claim against the State." Id. at 759. The widespread local knowledge relied upon in Allen differs significantly from the scientific evidence and handful of articles in an assortment of less accessible media that Chevron claims Smith should have discovered.

Even taking judicial notice of the existence of these articles, Chevron cannot establish that no set of facts exists where Smith remained unaware of a link between paraquat and his Parkinson's even with due diligence. Chevron cites several cases—all unpublished—in support of the grant of a motion to dismiss despite the factual nature of the discovery rule.[3] But, as noted above,

---

[3] Of the six cited cases, only Ohnemus v. Washington, 195 Wn. App. 135, 379 P.3d 142 (2016), is published, and only in part. The analysis of the discovery rule issue is addressed in the unpublished section of the opinion. Unpublished opinions of the Court of Appeals have no

due diligence is a question of fact, and "the appropriate inquiries an injured plaintiff must make depend on the circumstances of the case." <u>Winbun</u>, 143 Wn.2d at 219. For example, in <u>Lo v. Honda Motor Co., Ltd.</u>, plaintiffs filed a medical malpractice claim relating to the premature birth of infant who was later diagnosed as a spastic quadriplegic with cerebral palsy. 73 Wn. App. at 451. Physicians had told the plaintiff that "sometimes these things just happen," and the court determined there reasonably appeared to be a causal connection between the premature birth and the mother's vehicle accident while pregnant. <u>Id.</u> at 463. Whether the patient's legal representative exercised due diligence or should have asked about medical malpractice were questions for the trier of fact. <u>Id.</u> at 463. Similarly, in <u>Winbun</u>, relying on <u>Lo</u>, the court held that because the plaintiff had known of a "facially logical explanation" for her injuries other than the one alleged in the lawsuit, the reasonableness of plaintiff's failure to inquire as to other potential sources of injury was properly a question for the jury. <u>Id</u>. at 219-20.

---

precedential value and are not binding on any court. GR 14.1. Chevron's counsel relies on unpublished cases but failed to identify them as required by GR 14.1(a).

The majority of the cited cases pertain to dismissal on summary judgment and, thus, did not apply the CR 12(b)(6) standard, which is more difficult for a party seeking dismissal to satisfy. <u>Snyder v. Parnell</u>, 152 Wn. App. 1014, 2009 WL 2942663, is the only case Chevron cited in which the complaint was dismissed under CR 12(b)(6). In that case, the court determined that the discovery rule did not prevent expiration of the statute of limitations on an outrage claim where the plaintiff informed dispatchers that the defendant was making false accusations more than three years before filing the lawsuit. The exact date of plaintiff's call to 911 was known, and the plaintiff's own statements to dispatchers clearly showed knowledge of the facts of the harm and cause for the claim. <u>Id.</u> There was no factual question as to whether the plaintiff was aware of the factual elements for the cause of action, so the court affirmed the CR 12(b)(6) dismissal based on the statute of limitations. <u>Snyder</u> does not support Chevron's argument as it is neither precedential nor factually or analytically analogous.

In this case, within the limited scope of the pleading and taking the allegations as facts, we can hypothesize several scenarios in which Smith exercised due diligence, yet did not learn of the cause of his Parkinson's until April 2021. For instance, such circumstances might include whether Smith had access to publications about the effects of paraquat, either on the internet or in hard copy, what information his physicians provided to him about his diagnosis, and whether the neurodegenerative nature of Parkinson's impacted Smith's ability to discover the potential significance of his exposure to paraquat. These are issues of fact that impact when Smith knew or should have discovered the alleged link between paraquat and Parkinson's.

Chevron cannot demonstrate that no set of facts exists such that the discovery rule would apply to toll the statute of limitations. The trial court erred by dismissing the product liability and negligence claims under CR 12(b)(6).

II. Breach of Warranty Claims

In addition to the statutory product liability claims, Smith alleges that the defendants "expressly and impliedly warranted that [paraquat] was of merchantable quality, including that it was fit for the ordinary purposes for which such goods were used," and that they breached these warranties. " 'Product liability claims' based on breach of express or implied warranties can be raised either in tort under the [Washington Products Liability Act] or in contract under the Uniform Commercial Code." Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc., 119 Wn.2d 334, 343, 831 P.2d 724 (1992). Under the WPLA, a product manufacturer is subject to a claim for strict liability "if the

claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW." RCW 7.72.030(2).

Although the WPLA references Title 62A RCW (Washington's Uniform Commercial Code[4]), WPLA claims are limited to recovery for noneconomic loss. Berschauer/Phillips Const. Co. v. Seattle Sch. Dist. No. 1, 124 Wn.2d 816, 822, 881 P.2d 986 (1994); Washington Water Power Co. v. Graybar Elec. Co., 112 Wn.2d 847, 857-58, 774 P.2d 1199 (1989) (WPLA does not apply to economic loss). Claims for economic loss are properly brought under the UCC. Berschauer/Phillips, 124 Wn.2d at 822. "The key distinction is whether the economic loss arises from expectations created by agreement or from an unreasonable risk of harm created by a breach of the duty of reasonable care." Hofstee v. Dow, 109 Wn. App. 537, 544, 36 P.3d 1073 (2001).

The parties all cite to the UCC for law pertaining to express warranties. But Smith's express warranty claim does not arise from a breach of contract. The complaint alleges strictly noneconomic loss:

> As a direct and proximate result of these breaches of express and implied warranties … Plaintiff developed [Parkinson's]; has suffered severe and permanent physical pain, mental anguish, and disability, and will continue to do so for the remainder of his life; has suffered the loss of a normal life and will continue to do so for the remainder of his life; has lost income that he otherwise would have earned and will continue to do so for the remainder of his life; and has incurred reasonable expenses for necessary medical treatment and will continue to do so for the remainder of his life.

---

[4] Washington adopted the UCC in 1965. RCW 62A.1-101.

CP 39.

Parties generally cannot recover noneconomic damages for breach of contract. Repin v. State, 198 Wn. App. 243, 256, 392 P.3d 1174 (2017). Contract remedies are compensatory to give the injured party the benefit of the bargain they would have received if the contract had been performed. Ford v. Trendwest Resorts, Inc., 146 Wn.2d 146, 155, 43 P.3d 1223 (2002). Smith's claimed damages sound in tort, rather than contract:

> "Damages" is a term used in torts to denote "an award made to a person by a competent judicial tribunal ... because of a legal wrong done to him by another." Restatement (Second) of Torts § 902 cmt. a (1979). Tort actions are maintainable for a variety of reasons: to compensate injured parties; to determine parties' rights; to punish wrongdoers and deter wrongful conduct; and to vindicate parties and deter retaliation. Restatement (Second) of Torts § 901.

Id. at 154. The WPLA, rather than the UCC, governs Smith's breach of warranty claim.

A.     Privity

Chevron argued, and the trial court agreed, that Smith lacks contractual privity with the manufacturers and cannot bring an action for breach of warranty. However, the WPLA does not require privity. WPLA specifically states that "[a] claim may be asserted under this chapter even though the claimant did not buy the product from, or enter into any contractual relationship with, the product seller." RCW 7.72.010(5). The Washington State Supreme Court agrees:

> Before the WPLA was enacted in 1981, privity rules posed no barrier to product liability plaintiffs. Washington law permitted plaintiffs a tort remedy for any damages they suffered, including damages commonly characterized as "economic loss." Plaintiffs

16

similarly are free from privity rules under the WPLA, see RCW 7.72.010(5), but in a more limited set of circumstances than under the common law.

Graybar, 112 Wn.2d at 856-57 (internal citations omitted).

The requirement of privity applies to breach of warranty claims for economic loss brought under Title 62A RCW, but not to noneconomic loss under WPLA. Because Smith seeks recovery only for noneconomic loss, his express warranty claim arises under WPLA and does not require privity. The trial court improperly dismissed Smith's express warranty cause of action on this ground.

B.      Statute of Limitations for Express Warranty Claim

Chevron argues the express warranty claim was properly dismissed as time-barred under RCW 62A.2-725.[5] RCW 62A.2-725 specifically applies to actions for breach of contract. However, as discussed above, Smith seeks recovery only for noneconomic loss, which is recoverable under the WPLA, not Title 62A.2 RCW. Thus, the statute of limitations for breach of contract in RCW 62A.2-725 does not apply to Smith's breach of warranty claims. Instead, Smith's tort warranty claims are subject to the WPLA's three-year statute of limitations and the discovery rule set out in RCW 7.72.060(3).

---

[5] Smith and Chevron both analyze the warranty claim under the UCC, RCW 62A.2-725, which specifies the statute of limitations for contracts for sale. The UCC requires an action for breach of contract to be brought within four years after the cause of action has accrued. RCW 62A.2-725(1). The cause of action accrues when the breach occurs, "except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." RCW 62A.2-725(2). Under the listed exception, "if there is a warranty promising future performance of the product, the limitation period is extended until discovery of the breach." Giraud v. Quincy Farm & Chem., 102 Wn. App. 443, 451-52, 6 P.3d 104 (2000).

The WPLA claim accrues, and the statute of limitations begins to run, when the claimant "discovered, or in the exercise of due diligence should have discovered, a factual causal relationship of the product to the harm." <u>North Coast</u>, 111 Wn.2d at 319. As discussed above, Chevron has failed to establish that no set of facts exists such that the discovery rule would not apply and toll the statute of limitations on Smith's WPLA claims. Thus, Chevron failed to meet the high bar for dismissal under CR 12(b)(6). The trial court erred by dismissing Smith's express warranty claim.

We reverse and remand for further proceedings.

_____
Chung, J.

WE CONCUR:

_____       _____
Birk, J.